IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| RAYMOND LEE PEEBLES, #281540, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:12-CV-396-WHA |
| | ) | [WO] |
| | ) | |
| CAPT. HICKS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

This 42 U.S.C. § 1983 action is before the court on an amended complaint filed by Raymond Lee Peebles ("Peebles"), an indigent state inmate, challenging the adequacy of medical treatment provided to him for a knot above his right eye, which he attributed to a spider bite, during his incarceration at Kilby Correctional Facility ("Kilby") in the early months of 2012.  Peebles also alleges that a correctional officer opened his legal mail.  The plaintiff names as defendants in this cause of action Captain Janet Hicks; Warden Bobby Barrett; Warden George Edwards; CMS, now known as Corizon, Inc.; and Nurse Baker. Peebles seeks a declaratory judgment, injunctive relief and monetary damages for the alleged violations of his constitutional rights.  *Amended Complaint - Doc. No. 14* at 6-7.

The defendants filed special reports and supporting evidentiary materials addressing the plaintiff's claims for relief.  Pursuant to the orders entered in this case, the court deems

it appropriate to treat each of these reports as a motion for summary judgment.  *Order of August 3, 2012 - Doc. No. 27*.  Thus, this case is now pending on the defendants' motions for summary judgment.  Upon consideration of these motions, the evidentiary materials filed in support thereof, the sworn complaint and the plaintiff's verified response to the reports, the court concludes that the defendants' motions for summary judgment are due to be granted.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th  Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of

---

[1] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id*. "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Despite these stylistic changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [-- now dispute --] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact with respect to the claims presented by the plaintiff. Based on the foregoing, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."); *Jeffery*, 64 F.3d at 593-594 (internal quotation marks omitted) (Once the moving party meets its burden, "the non-moving party

must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.).  This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Peebles v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Education for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007).

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motions for summary judgment, Peebles is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Anderson*, 477

U.S. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's

case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (summary judgment appropriate where no genuine dispute of material fact exists).  At the summary judgment stage, this court must "consider all evidence in the record .... [including] pleadings, depositions, interrogatories, affidavits, etc. -- and can only grant summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists." *Strickland v. Norfolk Southern Railway Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243

(11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this

court's disregard of elementary principles of production and proof in a civil case. The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After such review, the court finds that Peebles has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment. *Matsushita*, *supra*.

## III. DISCUSSION[2]

### A. Absolute Immunity - Correctional Defendants

To the extent that Peebles sues defendants Hicks, Barrett and Edwards in their official capacities, they are immune from monetary damages. Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th

---

[2]The court limits its review to the allegations set forth in the amended complaint. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment."); *Ganstine v. Secretary, Florida Dept. of Corrections*, 502 Fed. App'x 905, 909-910 (11th Cir. 2012) (plaintiff may not amend complaint at the summary judgment stage by raising a new claim or presenting a new basis for a pending claim); *Chavis v. Clayton County School District*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (district court correctly refused to address a new theory raised during summary judgment because the plaintiff had not properly amended the complaint).

Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, defendants Hicks, Barrett and Edwards are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### B. Deliberate Indifference

1. <u>Correctional Defendants</u>.   Peebles asserts that defendants Hicks, Barrett and Edwards had knowledge of his dissatisfaction with the medical treatment he received for the swelling above his right eye. *Amended Complaint - Doc. No. 14* at 4-5. Peebles alleges that the correctional defendants acted with deliberate indifference because they did not intervene on his behalf and require that he receive a different mode of medical care for his pain/swelling than that prescribed by attending medical personnel at Kilby, and they refused to require that medical personnel refer him to a free-world specialist for evaluation of his condition. *Id*. These assertions entitle Peebles to no relief.

> The law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong. *See Vinnedge*

> *v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment). Moreover, "supervisory [correctional] officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. *See, e.g., Durmer v. O'Carroll*, 991 F.2d 64, 69 (3rd Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988)." *Williams v. Limestone County, Ala.*, 198 Fed.Appx. 893, 897 (11th Cir. 2006).

*Cameron v. Allen, et al.*, 525 F.Supp.2d 1302, 1307 (M.D. Ala. 2007).

To the extent that Peebles seeks relief from defendants Hicks, Barrett and Edwards for the treatment provided by health care personnel, even assuming that these defendants exerted some authority over those persons responsible for the provision of medical treatment at Kilby, the law is well settled "that Government officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of *respondeat superior* [or vicarious liability].... *Robertson v. Sichel,* 127 U.S. 507, 515–516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ('A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties'). Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 1948 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their

subordinates on the basis of respondeat superior or vicarious liability."); *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001) (supervisory official "can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir.2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677, 129 S.Ct. 1949. Thus, liability for medical treatment provided to Peebles could attach to defendants Hicks, Barrett and Edwards only if they "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions ... and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

Peebles has presented no evidence sufficient to create a genuine issue of disputed fact with respect his claim of deliberate indifference by the correctional defendants. There is nothing before the court which indicates that Hicks, Barrett and Edwards personally participated in or had any involvement, direct or otherwise, with the medical treatment provided to Peebles; rather, it is undisputed that they did not participate in the provision

11

of treatment to Peebles. The evidentiary materials before the court demonstrate that medical personnel made all decisions relative to the course of treatment provided to Peebles and that they provided treatment to Peebles in accordance with their professional judgment upon assessment of his condition.

In light of the foregoing, defendants Hicks, Barrett and Edwards are liable for decisions of the medical staff only if their actions bear a causal relationship to the purported violation of Peebles' constitutional rights.  To establish the requisite causal connection and avoid entry of summary judgment in favor of these defendants, Peebles must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] [the correctional defendants] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so...." or "a ... custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or ... facts [that] support an inference that [Hicks, Barrett and Edwards ] directed the [facility's health care staff] to act unlawfully, or knew that [the staff] would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted).  A thorough review of the pleadings and evidentiary materials submitted in this case demonstrates that Peebles has failed to meet this burden.

The record before the court contains no probative evidence to support an inference that Hicks, Barrett and Edwards directed medical personnel to act unlawfully or knew that

they would act unlawfully and failed to stop such action.  In addition, Peebles has presented no evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which the correctional defendants failed to take corrective action; instead, the medical records indicate that Peebles had continuous access to medical personnel and received treatment for his condition throughout his incarceration at Kilby.  Finally, the evidentiary materials submitted by the defendants demonstrate that the challenged medical treatment did not occur pursuant to a policy enacted by Hicks, Barrett or Edwards.  Thus, the required causal connection does not exist in this case and liability under the custom or policy standard is not warranted. *Cf. Employment Div. v. Smith,* 494 U.S. 872, 877, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990); *Turner v. Safely,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Summary judgment is therefore due to be granted in favor of defendants Hicks, Barrett and Edwards.

    2.  <u>Medical Defendants</u>.  Peebles asserts that CMS and Nurse Baker acted with deliberate indifference to the knot above his right eye.  To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that the defendants acted with deliberate indifference to a serious medical need.  *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986).  Specifically, medical

personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal quotations omitted) (As directed by *Estelle*, a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment."

> That medical malpractice-negligence by a [prison] physician [or nurse] - is insufficient to form the basis of a claim for deliberate indifference is well settled. *See Estelle v. Gamble,* 429 U.S. 97, 105-07, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir.1995). Instead, something more must be shown. Evidence must support a conclusion that a prison [medical provider's] harmful acts were intentional or reckless. *See Farmer v. Brennan,* 511 U.S. 825, 833-38, 114 S.Ct. 1970, 1977-79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir.1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams,* 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. Dekalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n. 28 (11th Cir.1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir.1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to establish "deliberate indifference to [a] serious medical need ...,
Plaintiff[] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's

injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-1307 (11th Cir. 2009).  When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner).  Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference).  Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate indifference, ... the Supreme Court has ... emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787. Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted).  Mere incidents of negligence

15

> or malpractice do not rise to the level of constitutional violations.  *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference).  Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.  *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Taylor*, 221 F.3d at 1258 (citation and internal quotations omitted) (To show deliberate indifference to a serious medical need, a plaintiff must demonstrate that the defendants' response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law."). Moreover, "as *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545; *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (prison medical personnel do not violate the Eighth Amendment simply because their opinions

16

concerning medical treatment conflict with that of the inmate-patient).   Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records.   *See Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990).

Peebles complains that Nurse Baker failed to treat the pain/swelling above his right eye which he attributed to a spider bite.   *Amended Complaint - Doc. No. 14* at 4.   Peebles further complains that the medical defendants refused to refer him to a free-world specialist for evaluation of his condition.   *Id*.   The medical defendants adamantly deny they acted with deliberate indifference to Peebles' medical condition and, instead, maintain that Peebles received appropriate treatment for his condition.

The evidentiary materials filed by the defendants address the allegations made by Peebles.   A thorough review of these documents demonstrates that the affidavit submitted by the medical defendants describing the treatment provided to Peebles is corroborated by the objective medical records contemporaneously compiled with such treatment.   In this affidavit, Nurse Baker addresses the treatment provided to Peebles for the swelling above his right eye as follows:

> I saw Mr. Peebles on March 8, 2012, at the Health Care Unit at the Kilby Correctional Facility.   Mr. Peebles was complaining of a painful knot above his right eye.   Mr. Peebles stated that he had been bitten by a spider above his right eye, although this representation could not be confirmed. Due to the knot above Mr. Peebles' right eye, he was prescribed Naprosyn for the pain, Bactrim, an antibiotic, CTM to alleviate swelling, antibiotic

17

soap, and also some triple antibiotic ointment.

Mr. Peebles was advised to put moist heat on the knot [above] his right eye to [prevent] subsequent infection and to assist with drainage and healing. However, Mr. Peebles chose not to follow the prescribed course of treatment, and did not treat the knot above the right eye with moist heat application.

On March 9, 2012, Mr. Peebles signed a waiver with regards to medical treatment [by correctional health care personnel as he had been seen at sick call the previous day and, instead, sought referral to a free-world specialist].

I next saw Mr. Peebles on March 13, 2012, following up on the knot above Mr. Peebles' right eye. At that time, I took a history from Mr. Peebles and was informed by Mr. Peebles that he had stopped utilizing the moist heat application. On March 13, 2012, Mr. Peebles voiced no further complaints with regards to the knot above his eye, although at that juncture, it did not show much improvement.

On April 6, 2012, Mr. Peebles was seen by a licensed practical nurse in the Health Care Unit at the Kilby Correctional Facility. Mr. Peebles was seen for a follow-up appointment with regards to the knot above his right eye. The medical notation states that Mr. Peebles had a soft tissue infection beginning on March 8, 2012. However, as of April 6, 2012, the soft tissue infection had been resolved. The area above the right eye had no opening, and no drainage. The plan as noted by the LPN was -- resolved soft tissue infection.

Mr. Peebles had been seen by an Optometrist in February 2012, who made a notation that Mr. Peebles suffered from life-long Nystagmus, an eye condition which causes watery eyes. However, this condition is not related to the knot above the right eye.

I subsequently saw Mr. Peebles on May 17, 2012, and May 29, 2012, where Mr. Peebles was complaining about watery eyes, gout, and stomach issues. However, none of these issues related to the knot above the right eye that Mr. Peebles had beginning on March 8, 2012.

I did not see [or examine] Mr. Peebles subsequent to March 13, 2012, with regards to the knot above his right eye for which the LPN made a notation on April 6, 2012, that the matter had resolved.

When Mr. Peebles first presented himself to the Health Care Unit on March 8, 2012, a subjective history was taken, a physical was performed, and Mr. Peebles was treated for the knot above his right eye. Mr. Peebles was

prescribed with pain medication, antibiotic medication, and antibiotic ointment.

The medical records reveal that each time Mr. Peebles requested medical treatment with regards to the knot above his right eye he was seen and treated by me, and other medical staff at the Kilby Correctional Facility. At no time has Mr. Peebles medical treatment ever been denied, or delayed by me or to my knowledge, any of the medical staff at the Kilby Correctional Facility. Mr. Peebles was seen on multiple occasions by me and other nurses at the Kilby Correctional Facility with regards to the knot above his right eye, as well as other medical issues and concerns.

*Medical Defendants' Exhibit A - Doc. No. 22-1* at 2-6. The synopsis of treatment provided to Peebles as detailed by Nurse Baker in her affidavit is confirmed by the medical records filed in this case, *Defendants' Exhibit A - Doc. No. 22-2 through Doc. No. 22-6*, and there is nothing before the court which undermines the validity of these records.

Under the circumstances of this case, the court concludes that the course of treatment undertaken by medical personnel at Kilby in addressing the knot above Peebles' right eye did not violate his constitutional rights. The medical care Peebles received was adequate and certainly not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505. The allegations presented by Peebles simply fail to establish deliberate indifference. *Garvin*, 236 F.3d at 898 (difference of opinion regarding manner in which condition should be treated fails to demonstrate a constitutional violation); *Adams*, 61 F.3d at 1545-1546 (Whether medical personnel "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore

19

not an appropriate basis" on which to ground constitutional liability.  In addition, the inmate's allegation that his prison physician did not diligently pursue alternative means of treating condition "did not 'rise beyond negligence'... to the level of deliberate indifference."); *Hamm*, 774 F.2d at 1505 (inmate's desire for some other form of medical treatment does not constitute deliberate indifference violative of the Constitution); *Franklin*, 662 F.2d at 1344 (simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment).

It is undisputed that Peebles received medical care for his complaints of pain/swelling above his right eye, and likewise evident that health care personnel rendered treatment to Peebles for this condition in accordance with their professional judgment. Based on well settled law cited herein, Peebles' mere desire for a different mode of medical treatment does not constitute deliberate indifference.  In addition, Peebles has failed to present any evidence which indicates the defendants knew that the manner in which they provided treatment to him created a substantial risk to his health and, with this knowledge, consciously disregarded such risk.  The record is therefore devoid of evidence, significantly probative or otherwise, showing that the defendants acted with deliberate indifference to Peebles' medical condition.  Consequently, summary judgment is due to be granted in favor of defendants CMS and Baker on the deliberate indifference claim presented by Peebles. *Carter*, 352 F.3d at 1350.

20

### C.  Legal Mail

Peebles makes the conclusory allegation that defendant Hicks violated his constitutional rights when she opened an envelope which contained legal mail relevant to this case.  Ms. Hicks denies opening any mail, legal or otherwise, addressed to/from Peebles with respect to this case.  *Exhibit 2 to the Correctional Defendants' Special Report - Doc. No. 26-2* at 1.  Hicks advises that she would not have access to Peebles' mail as she is not assigned to the mail room.  *Id*.  Hicks further maintains that her only relevant involvement with Peebles occurred on two separate occasions when he complained to her about the treatment he had received from medical personnel for the swelling above his right eye.  *Id*. at 2.

Interference with legal mail implicates an inmate's rights of access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the United States Constitution.  The court will therefore address the instant complaint as raising each of these claims.

1.  <u>Access to Courts</u>.  The law is well settled that prisoners are entitled to "a reasonably adequate opportunity" to present claims of constitutional violations to the courts.  *Bounds v. Smith*, 430 U.S. 817, 825 (1977).  In *Lewis v. Casey*, 518 U.S. 343, 349 (1996), the Supreme Court expounded on the decision in *Bounds* and required that an inmate demonstrate the existence of an "actual injury" effecting his effort to pursue a

nonfrivolous legal claim to demonstrate a denial of access to the courts.  Moreover, *Lewis* emphasizes that a *Bounds* violation is related to an inmate's lack of capability to present claims.  "*Bounds*, which as we have said guarantees no particular methodology but rather the conferral of a capability -- the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.  When an inmate ... shows that an actionable claim of this nature which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because the capability of filing suit has not been provided, he demonstrates" the requisite injury.  *Lewis*, 518 U.S. at 356.

Peebles raises only a conclusory allegation of a constitutional violation with respect to his ability to proceed in this cause of action.  Other than this allegation, Peebles presents no evidence that defendant Hicks actually opened his legal mail.  Moreover, even assuming that Hicks opened Peebles' legal mail, the record is devoid of evidence that one incident deprived Peebles of the ***capability*** of pursing his claims in this federal civil action or in any way hindered his efforts to pursue his claims before this court; rather, Peebles has demonstrated that he is proficient at presenting and arguing the claims of his choice to this or any other court.  Specifically, the record in this case demonstrates that Peebles filed numerous pleadings and documents in this case, including various motions, an amended complaint and responses to orders/actions of the court.  Nothing before the court indicates

that the alleged opening of his legal mail in any way improperly impeded Peebles' efforts to pursue nonfrivolous legal claims before this court and, therefore, Peebles has failed to establish the requisite injury. *Lewis*, 518 U.S. at 356. In the absence of ultimate prejudice or disadvantage, defendant Hicks is entitled to summary judgment on this claim. *See Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991).

2. <u>Free Speech</u>. An isolated incident of the unauthorized opening of legal mail, without more, is insufficient to establish a constitutional violation. *Davis v. Goord*, 320 F.3d 346, 351 (2nd Cir. 2003) (allegation of two incidents of mail interference did not warrant relief where plaintiff failed to allege invidious intent or actual harm); *Florence v. Booker*, 23 Fed.Appx. 970, 972-973 (10th Cir. 2001) ("single incident in which prison officials allegedly improperly opened legal mail" did not justify relief where plaintiff failed to "show either an improper motivation by defendants or denial of access to the courts."); *Berger v. White*, 12 Fed.Appx. 768, 771, (10th Cir. 2001) ("isolated incidents of opening constitutionally protected legal mail, 'without any evidence of improper motive or resulting interference with [plaintiff's] right to counsel or to access to the courts,' do not support a civil rights claim. *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990)"); *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) (isolated incident of inadvertent opening of inmate's incoming legal mail, without evidence of improper motive or resulting interference with inmate's right to counsel or access to courts, does not rise to level of

23

constitutional violation); *Stevenson v. Koskey,* 877 F.2d 1435, 1441 (9th Cir. 1989) (inadvertent opening of an inmate's legal mail, while not to be condoned, constitutes mere negligence and does not rise to the level of a constitutional rights violation cognizable under 42 U.S.C. § 1983).

As previously determined, Peebles has failed to demonstrate that the opening of his mail denied him access to the court. Moreover, he has failed to demonstrate that the alleged action resulted from improper motivation. Summary judgment is therefore due to be granted in favor of defendant Hicks on this claim.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motions for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the defendants.

3. This case be dismissed with prejudice.

4. The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before April 21, 2015 the parties may file objections to this Recommendation. Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this

Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 7th day of April, 2015.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE